[Cite as *Kennedy v. Western Reserve Senior Care*, 2023-Ohio-264.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| CLAUDIA L. KENNEDY, EXECUTRIX OF THE ESTATE OF DONALD R. GERRES, DECEASED, | CASE NO. 2021-P-0055 |
| Plaintiff-Appellant, | Civil Appeal from the Court of Common Pleas |
| - v - | Trial Court No. 2019 CV 00385 |
| WESTERN RESERVE SENIOR CARE, et al., | |
| Defendants-Appellees. | |

# **O P I N I O N**

Decided: January 30, 2023
Judgment: Affirmed

*Michael D. Shroge*, Plevin & Gallucci Co., LPA, 55 Public Square, Suite 2222, Cleveland, OH 44113; *Paul W. Flowers* and *Louis E. Grube*, Flowers & Grube, Terminal Tower, 40th Floor, 50 Public Square, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Dirk E. Riemenschneider*, Buckingham Doolittle & Burroughs, LLC, One Cleveland Center, Suite 1700, 1375 East Ninth Street, Cleveland, OH 44114; and *Justin S. Greenfelder*, Buckingham Doolittle & Burroughs, LLC, 4277 Munson Street, NW, Canton, OH 44718 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Claudia L. Kennedy, executrix of the estate of Donald R. Gerres, deceased, appeals the judgment granting a directed verdict to appellees, Western Reserve Senior Care ("Western Reserve"), Sataya Acharya, M.D., and Kindred at Home d.b.a. Western Reserve Senior Care ("Kindred").

{¶2} Kennedy originally brought wrongful death and survivorship claims against Western Reserve, Dr. Acharya, Daniel Kendis, M.D, and several other defendants in 2014, alleging they provided substandard medical care that resulted in the decedent's death on October 17, 2013. That case was voluntarily dismissed in January 2019.

{¶3} In May 2019, Kennedy refiled this case, asserting wrongful death and survivorship claims against Western Reserve, Kindred, Dr. Acharya, and Dr. Kendis. Kindred never answered or filed any responsive pleadings, and Kennedy voluntarily dismissed her claims against Dr. Kendis pursuant to Civ.R. 41 before trial. Although Kindred is an "appellee" in this matter, the remainder of this opinion shall refer only to Western Reserve and Dr. Acharya collectively as "appellees" for ease of discussion due to Kindred's lack of appearance.

{¶4} Appellees filed a motion for judgment on the pleadings, raising arguments based on the medical malpractice statute of repose, R.C. 2305.113(C). The trial court denied the motions based on a First District case, *Wilson v. Durrani*, 2019-Ohio-3880, 145 N.E.3d 1071 (1st Dist.) ("*Wilson I*"), which held that the savings statute, R.C. 2305.19, if properly invoked, allows an action to survive beyond the expiration of the statute of repose.

{¶5} Three months before trial, the Supreme Court of Ohio decided *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448 ("*Wilson II*") and reversed *Wilson I*, holding that the savings statute did not allow the appellants to refile their medical malpractice claims after the expiration of the statute of repose. *Wilson II* at ¶ 32.

{¶6} The Supreme Court of Ohio granted the *Wilson* appellants' motion for reconsideration in part, to consider whether the period of repose was tolled pursuant to

2

R.C. 2305.15(A), "if the person is out of the state, has absconded, or conceals self." *Wilson v. Durrani*, 161 Ohio St.3d 1453, 2021-Ohio-534, 163 N.E.3d 580. The court also denied the request to prospectively apply *Wilson II*. *Id.*

{¶7} Accordingly, here, appellees filed a motion for leave to file a motion for summary judgment instanter, again contending that Kennedy was barred from asserting any claims against appellees because the four-year period under the statute of repose had long expired. Kennedy filed a memorandum in opposition. The trial court denied appellees' motion determining that the case had been pending for three years and the jury trial was less than a month away.

{¶8} Appellees filed a motion for directed verdict, again arguing that Kennedy's claims were barred by the statute of repose and not saved by the savings statute pursuant to the Supreme Court of Ohio's decision in *Wilson II*.

{¶9} After Kennedy's opening statements, the court considered the motion. The court found that *Wilson II* " * * * specifically holds that there is a four-year statute of repose for a medical claim and this wrongful death is based on a medical claim, and clearly that statute of repose has been exceeded by more than four years based on the opening statement. Based on that, it's a matter of law, the Court has to dismiss the case. And construing it most favorably [to Kennedy], there's just no question that the Supreme Court changed the law." Thus, the trial court granted appellees' motion for a directed verdict and dismissed the case.

{¶10} Kennedy assigns two errors on appeal:

> [1.] By granting a directed verdict in favor of all the defendants, including one in default who had not filed such a request, the common pleas court judge erred as a matter of law.

3

Case No. 2021-P-0055

[2.] The trial court erred, as a matter of law, by directing a verdict at the start of the jury trial in favor of defendant-appellees, Western Reserve Senior Care and Sataya Acharya, M.D.

{¶11} Because a motion for a directed verdict presents a question of law, we review the trial court's judgment de novo. *Bliss v. Chandler*, 11th Dist. Geauga No. 2006-G-2742, 2007-Ohio-6161, ¶ 48.

{¶12} Pursuant to Civ.R. 50(A)(4):

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶13} "Under this rule, a trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant." (Citations omitted.) *Bliss* at ¶ 47.

{¶14} "A motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Id.* at 68.

{¶15} Kennedy's two assignments of error challenge the directed verdict ruling. We address her assigned errors out of order to facilitate our discussion. In Kennedy's

4

second assigned error, she raises numerous arguments in an attempt to circumvent the effect of the Supreme Court of Ohio's holding in *Wilson II*. She contends appellees waived their statute of repose affirmative defense by failing to raise it in their first motion for a judgment on the pleadings; the statute of repose is inapplicable to wrongful death actions; the statute of repose was tolled pursuant to the out-of-state tolling provisions set forth in R.C. 2305.15 because Dr. Acharya moved to Pittsburgh; and the statute of repose is unconstitutional as applied.

{¶16} The statute of repose for medical claims is contained in R.C. 2305.113(C), which states:

> Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:
>
> (1) No action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * claim.
>
> (2) If an action upon a medical * * * claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim, then, any action upon that claim is barred.

{¶17} As noted, in *Wilson II*, the Supreme Court of Ohio held that a plaintiff may not take advantage of Ohio's savings statute, R.C. 2305.19(A), to refile a medical claim after the applicable one-year statute of limitations has expired if the four-year statute of repose for medical claims has also expired. *Wilson II*, 2020-Ohio-6827, at ¶ 1. The court determined that R.C. 2305.19(A) neither operates as a statute of limitations nor operates to toll the statute of limitations. *Id.* at ¶ 18. Rather, it provides a plaintiff with a limited

5

period of time in which to refile a dismissed claim by commencing a new action that would otherwise be barred by the statute of limitations. *Id.*

{¶18} Further, R.C. 2305.19(A) does not create an exception to the statute of repose. If the General Assembly had intended the savings statute to provide an extension of the medical claims statute of repose, it would have expressly provided one in R.C. 2305.113(C), as it did in R.C. 2305.10(C), the statute of repose that governs product-liability claims. *Wilson II* at ¶ 38. The general character of statutes of repose is that they provide an absolute temporal limit on a defendant's potential liability. *Id.* at ¶ 37.

{¶19} Thus,

> R.C. 2305.113(C) is a true statute of repose that, except as expressly stated in R.C. 2305.113(C) and (D), clearly and unambiguously precludes the commencement of a medical claim more than four years after the occurrence of the alleged act or omission that forms the basis of the claim. Expiration of the statute of repose precludes the commencement, pursuant to the savings statute, of a claim that has previously failed otherwise than on the merits in a prior action.

*Id.* at ¶ 38.

{¶20} Kennedy first contends appellees waived the statute of repose affirmative defense pursuant to Civ.R. 12(G) and (H) by failing to raise it in their first motion for judgment on the pleadings.

{¶21} After appellees filed an answer, they filed a "motion for judgment on the pleadings related to plaintiff's claim for punitive damages," arguing that Kennedy cannot pursue punitive damages because punitive damages are not recoverable in a wrongful death action. Dr. Kendis filed a motion to dismiss, arguing that any claims of negligence or wrongful death by Kennedy were barred by the four-year medical claim statute of repose. Appellees filed a second motion for judgment on the pleadings also raising the

6

four-year statute of repose defense. Kennedy contends that appellees were precluded from raising the statute of repose affirmative defense in a separate, second motion.

{¶22} Civ.R. 12 governs certain defenses and when and how they must be presented, either by pleading or motion. Civ.R. 12(B) addresses how defenses are to be presented:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19 or Rule 19.1. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. * * *."

{¶23} Civ.R. 12(G) provides:

> A party who makes a motion under this rule must join with it the other motions herein provided for and then available to him. If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter assert by motion or responsive pleading, any of the defenses or objections so omitted, except as provided in subdivision (H) of this rule.

{¶24} Civ.R. 12(H) provides:

> (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither made by motion under this rule nor included in a

7

responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(A), or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action.

{¶25} Staff Note 8 to Civ.R. 12, "[c]onsolidation of defenses and objections" explains:

Rule 12(G) follows up the abolition of the special appearance in Rule 12(B) by actually compelling the defendant who makes a motion to include therein all defenses and objections then available to him *which this rule permits* to be raised by motion. This compulsion is accomplished by the provision that no waivable defense or objection which is omitted from a motion may thereafter be asserted in an answer.

(Emphasis added.)

{¶26} A review of appellees' answer reveals the statute of repose was timely raised as an affirmative defense, and appellees continued to raise the defense throughout the entirety of this case, following *Wilson v. Durrani* as it navigated the court system. From a plain reading of the rule, it is not an affirmative defense subject to the waiver provisions of Civ.R. 12. *See, e.g., Stewart v. Forum Health*, 190 Ohio App.3d 484, 2010-Ohio-4855, 942 N.E.2d 1117, ¶ 29 (7th Dist.) (statute of limitations defense is not subject to the waiver provisions of Civ.R. 12).

While Civ.R. 12(G) provides that the failure to assert certain defenses results in waiver, thus prohibiting the further assertion of such defenses, that rule does not apply here. The defenses asserted herein are not those which would be

8

> subject to waiver for failure to assert them in a pre-answer motion. They were properly asserted as affirmative defenses in the answer. Since the 'motion to dismiss' filed here was filed after the answer, it was more in the nature of a motion for judgment on the pleadings and may therefore be treated as such.

*Barile v. Univ. v. Virginia*, 30 Ohio App.3d 190, 192, 507 N.E.2d 448, 450 (8th Dist.1986).

{¶27} Kennedy next contends that the medical malpractice statute of repose does not apply to wrongful death actions. The issue of whether the statute of repose for medical claims, set forth under R.C. 2305.113(C), applies to statutory wrongful death claims is currently before the Supreme Court of Ohio on appeal and conflict certification from the Tenth District's decision in *Everhart v. Coshocton Cty. Mem. Hosp.*, 2022-Ohio-629, 186 N.E.3d 232 (10th Dist.). *Everhart v. Coshocton Cty. Mem. Hosp.*, 167 Ohio St.3d 1441, 2022-Ohio-2162, 189 N.E.3d 816 (certifying conflict); *Everhart v. Coshocton Cty. Mem. Hosp.*, 167 Ohio St.3d 1442, 2022-Ohio-2162, 189 N.E.3d 818 (accepting appeal and consolidating briefing with certified conflict case). The Tenth District concluded in *Everhart* that the statute of repose does not apply to *any* wrongful death action. This holding is in conflict with this court's decision in *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, ¶ 45-46, wherein we held that the wrongful death action at issue involved a "medical claim" to which the statute of repose applied. For the reasons that follow, we adhere to our holding in *Martin*.

{¶28} It is this court's duty "'to apply the statute as the General Assembly has drafted it; it is not our duty to rewrite it,' even to cure a perceived omission." *Crissinger v. Christ Hosp.*, 2017-Ohio-9256, 106 N.E. 3d 798, ¶ 23 (1st Dist.), quoting *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29, and *Schlueter v. Cleveland Bd. of Edn.*, 12 Ohio Misc. 186, 199, 230

9

N.E.2d 364 (C.P.1960) ("[A statute's] undesirable consequences do not justify a departure from the terms of the act as written, and the courts may not supply a casus omissus however desirable it may be to supply the omitted provision.").

{¶29} As set forth above, the statute of repose is contained in R.C. 2305.113(C), which provides:

> (C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:
>
> (1) No action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim.
>
> (2) If an action upon a medical * * * claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim, then, any action upon that claim is barred.

R.C. 2305.113(E)(3) provides:

> As used in this section * * * "[m]edical claim" means *any claim* that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:
>
> * * *
>
> (c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of

10

care prepared for a resident of a home and to which both types of claims either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

\* \* \*

(Emphasis added.)

{¶30} Although not all wrongful death claims will come within the purview of a "medical claim," the claim here fits squarely within that definition. Kennedy's claim for wrongful death is based on the "substandard medical care" to the decedent that resulted in his death on October 17, 2013. There is no dispute that Kennedy's wrongful death claim is a "claim * * * asserted in [a] civil action" against defendants identified in R.C. 2305.113(E)(3), or that the claim arose out of "the medical diagnosis, care, or treatment of" the decedent. *See Martin*, 2021-Ohio-4614, at ¶ 45-46 (applying the plain language of R.C. 2305.113(E)(3) to conclude that the wrongful death claim there at issue was also a "medical claim" to which the statute of repose applied).

{¶31} We agree with much of the dissent's discussion regarding the distinction between medical malpractice claims and wrongful death claims. However, the dissent does not dispute that the wrongful death claim here involves a (1) claim in a civil action, (2) asserted against the medical defendants listed in the statute, (3) arising from the medical diagnosis, care, or treatment of any person. Pursuant to R.C. 2505.113, the statute of repose applies when these three conditions are met.

11

Case No. 2021-P-0055

{¶32} Based upon the plain language of the statute, Kennedy's wrongful death claim meets the definition of a "medical claim" for purposes of the statute of repose and is thus barred under that provision absent an applicable exception.

{¶33} Kennedy further contends that the out-of-state tolling provisions pursuant to R.C. 2305.15 apply to toll the statute of repose because Dr. Acharya moved to Pittsburgh in the summer of 2014.

{¶34} Pursuant to R.C. 2305.15(A):

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

{¶35} Recently, in *Elliot v. Durrani*, --- Ohio St.3d ----, 2022-Ohio-4190, --- N.E.3d ----, *reconsideration denied*, 2022-Ohio-4652, the Supreme Court of Ohio addressed "whether the four-year statute of repose cuts off a plaintiff's time for filing a medical-malpractice claim when the defendant has fled the country before the statute of repose has expired." The court held that "by its plain language, R.C. 2305.15(A) tolls the medical-claim statute of repose, R.C. 2305.113(C), and therefore the statute of repose does not bar the filing of a claim during the defendant's absence."

{¶36} Here, Kennedy maintains that Dr. Acharya acknowledged in her deposition that she left Ohio and moved to Pittsburgh in the summer of 2014. Accordingly, Kennedy

12

Case No. 2021-P-0055

argues that the statute of repose has been tolled since Dr. Acharya's departure from the state of Ohio.

{¶37} However, appellees respond that Dr. Acharya testified in her deposition that she moved to Pittsburgh for employment purposes. They argue that the tolling statute does not apply to defendants who leave the state for legitimate business purposes, as such application of the tolling statute has been deemed unconstitutional by the United States Supreme Court in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 889, 100 L.Ed.2d 896, 108 S.Ct. 2218, 2220 (1988) ("Applying well-settled constitutional principles, we find the Ohio statute that suspends limitations protection for out-of-state entities is a violation of the Commerce Clause.").

{¶38} First, we note that, in the cited portion of the deposition transcript, Dr. Acharya testified that she moved to Pittsburgh in July or August 2014 and has resided there since that time. She further testified that she worked in that "local" area for Eagle Hospitalist commencing in September 2014, and was employed on the date of deposition, September 28, 2017, at UPMC. Dr. Archarya maintains that she left Ohio for legitimate business purposes. In Kennedy's reply brief, she does not dispute that Dr. Archarya moved out of the state for employment purposes.

{¶39} This court has explained:

> [I]n *Bendix* * * *, the United States Supreme Court examined
> R.C. 2305.15(A) to determine if it violated the Commerce
> Clause in reference to out-of-state corporations. There, the
> court determined that the statute-of-limitations defense was in
> effect denied to out-of-state corporations by R.C. 2305.15. It
> reasoned that a foreign corporation would have to choose
> between exposure to the general jurisdiction of Ohio courts or
> forfeiture of any limitations defense under the tolling statute.
> The court determined this choice to be an impermissible

13

> burden on interstate commerce, thereby violating the Commerce Clause.
>
> *Bendix* was then extended to a case where an Ohio resident moved out of state for employment purposes. *Tesar v. Hallas*, [738 F.Supp. 240 (N.D. Ohio 1990)]. In *Tesar*, the court held that interstate commerce is clearly affected when persons move between states in the course of or in search of employment. *Id.* at 242.

*Lovejoy v. Macek*, 122 Ohio App.3d 558, 562, 702 N.E.2d 457, 459-60 (11th Dist.1997). Here, because there is no dispute that Dr. Archarya moved from Ohio for legitimate business purposes, the tolling statute cannot be constitutionally applied to her.

{¶40} In her last argument contained in her second assigned error, Kennedy contends the statute of repose is unconstitutional as applied in this case because it violates her rights to due process, the equal protection clause, and her right to a trial by jury under the United States Constitution and the Ohio Constitution.

{¶41} "[W]here statutes are challenged on the ground that they are unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts." *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 181, quoting *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 38, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629 (1944), paragraph six of the syllabus. "'The only judicial inquiry into the constitutionality of a statute involves the question of legislative power, not legislative wisdom.'" *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 9, quoting *State ex rel. Bowman v. Allen Cty. Bd. of Commrs.*, 124 Ohio St. 174, 196, 177 N.E. 271 (1931). "The

14

practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ruther* at ¶ 9, quoting *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14.

{¶42} At the outset we note that the Supreme Court of Ohio rejected an "as applied" constitutional challenge, albeit not in the context of the interplay between Ohio's savings statute, R.C. 2305.19, and the medical malpractice statute of repose, R.C. 2503.113(C) in *Ruther*. The Supreme Court held that the four-year statute of repose for medical malpractice claims, as applied to the plaintiff's surviving spouse, did not violate the "right to remedy" or right to redress injury and due process provision of the Ohio Constitution, Article I, Section 16. *Id.* at ¶ 35.

{¶43} The court explained:

> [T]he General Assembly recognized in R.C. 2305.113 that in some cases, an injury may not manifest itself within one year of a breach of a duty of care and so has provided the general discovery period of four years. Within that boundary, when the patient discovers or should have discovered the injury, or when the relationship with the doctor terminates, whichever is later, the one-year statute of limitations begins to run. R.C. 2305.113(C) does not bar a vested cause of action, but prevents a cause of action from vesting more than four years after the breach of the duty of care. Therefore, it is a true statute of repose.

*Ruther* at ¶ 18.

{¶44} The court then determined that R.C. 2305.113(C) is a valid exercise of the General Assembly's authority to define or limit a cause of action, stating:

> [A] prospective plaintiff in an action for medical negligence is typically granted one year to pursue a claim from the time it accrues, provided that the accrual itself happens within four years. The statute of repose grants a prospective plaintiff to

15

Case No. 2021-P-0055

whom it applies four years to discover a claim and one year to commence that action, or it is barred before it arises. Although in some cases, discovery of an injury will not occur within the time frame chosen, the General Assembly has struck a rational balance between the rights of prospective claimants to pursue their allegations and the rights of prospective defendants to have protection from stale litigation. This court should not substitute its judgment for that legislative choice.

*Ruther*, 2012-Ohio-5686, at ¶ 28.

**{¶45}** "Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before." *Ruther* at ¶ 19. "The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation." *Id.*

**{¶46}** In *Antoon v. Cleveland Clinic Foundation et al.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, the Supreme Court of Ohio, in finding that R.C. 2305.113(C) does not "extinguish" a vested right violating the Ohio Constitution's right to a remedy, remarked that, "this court has, in multiple cases recognized that a party need not be granted an unlimited amount of time to bring a vested cause of action, but must receive only a 'reasonable' amount of time in order for a law to pass constitutional muster." *Id.* at ¶ 28.

**{¶47}** In this case, Kennedy filed her first suit against appellees, as well as several others, alleging medical malpractice and wrongful death one year after decedent passed away. She then voluntarily dismissed the suit after the four-year expiration of the statute of repose.

16

**{¶48}** While we recognize the harsh result in this case, we cannot say that Kennedy offered clear and convincing evidence that she was deprived of due process. As Justice McGee Brown noted in her concurring opinion in *Ruther*:

> [I]t is unquestionably the province of the legislature to define claims and remedies under Ohio law. In this case, the General Assembly has determined that four years from the date of the alleged negligence is the appropriate timeframe in which to file a medical-malpractice claim. R.C. 2305.113(C). We cannot substitute our judgment for that of the legislature.

*Ruther*, 2012-Ohio-5686, at ¶ 36.

**{¶49}** Kennedy also argues that the statute of repose is unconstitutional as applied because it violates her right to equal protection pursuant to Section 1 of the Fourteenth Amendment to the United States Constitution, and Article 1, Section 2 of the Ohio Constitution.

**{¶50}** "Courts apply varying levels of scrutiny to equal-protection challenges depending on the rights at issue and the purportedly discriminatory classifications created by the law." *Pickaway County Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 18. Because the parties do not dispute that this case does not involve a fundamental right or suspect classification, rational-basis review applies. "'The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational.'" *Id.* at ¶ 19, quoting *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.*, 73 Ohio St.3d 260, 267, 652 N.E.2d 952 (1995).

17

**{¶51}** "For a statute to be constitutional, the General Assembly must have a rational basis for determining the period of time during which a party may bring suit based on a vested cause of action." *Antoon*, 2016-Ohio-7432, at ¶ 29. The court in *Antoon* determined that the statute does not "'completely foreclose a cause of action for injured plaintiffs or otherwise eliminate their ability to receive a meaningful remedy.'" *Id.* at ¶ 29, quoting *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 29. Thus, the court held:

> Ohio's medical malpractice statute of repose, R.C. 2305.113(C), is constitutional even to the extent that it prohibits bringing suit on a cause of action that has vested. Significant public-policy considerations support granting repose to defendants, and the General Assembly has determined that four years is a reasonable length of time to bring a medical-malpractice claim. * * * R.C. 2305.113(C) is a true statute of repose that applies to both vested and nonvested claims.

*Id.* at ¶ 34-35.

**{¶52}** Turning to *Wilson II*, the court reviewed that the General Assembly declined to expressly create an exception in R.C. 2305.113(C) for application of the savings statute, as it has done in other statutes, most notably, the ten-year statute of repose for product-liability claims, which expressly states, unlike R.C. 2305.113(C), that it applies "'[e]xcept as otherwise provided in' R.C. 2305.19, the savings statute." *Wilson II*, 2020-Ohio-6827, at ¶ 30.

**{¶53}** Kennedy cites to *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), in support of her argument that the statute of repose, as applied, violates her equal protection rights. In that case, the Supreme Court of Ohio found a former version of the statute of repose in R.C. 2305.113 unconstitutional as applied to

18

adult medical malpractice litigants who, following discovery, did not have time provided by the statute in which to file their actions, i.e., they discovered their claim within the third year. *Id.* at paragraph two of the syllabus.

**{¶54}** Kennedy timely discovered her claims well within the four-year statute of repose and initiated her first suit within one year. We fail to see how *Gaines* is applicable to the present situation.

**{¶55}** Kennedy failed to introduce any evidence, clear and convincing or otherwise, that her right to equal protection is being violated. There is a valid state interest in providing finality to defendants, and we cannot say that the means the state has chosen to advance that interest is irrational.

**{¶56}** As the Supreme Court of Ohio aptly stated in *Antoon,* "Our role in reviewing a statute is not to express agreement or disagreement with the public policy that led to its enactment. 'The only judicial inquiry into the constitutionality of a statute involves the question of legislative power, not legislative wisdom.'" *Antoon*, 2016-Ohio-7432, at ¶ 33, quoting *State ex rel. Bowman v. Allen Cty. Bd. of Commrs.*, 124 Ohio St. 174, 196, 177 N.E. 271 (1931).

**{¶57}** Last, Kennedy contends that the trial court's directed verdict based on *Wilson II* violates her right to a trial by jury by making an attenuated argument that she is being denied "her right to having a jury determine whether the Decedent's estate and survivors are entitled to an award of wrongful death and survivorship damages."

**{¶58}** Guaranteed under the right to a trial by jury, "is the right of either party, in an action for the recovery of money only, to demand that the issues of fact therein be tried by a jury." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880

19

Case No. 2021-P-0055

N.E.2d 420, ¶ 34, quoting *Dunn v. Kanmacher*, 26 Ohio St. 497, 502-503 (1875). "Any law that prevents the jury from completing this task or allows another entity to substitute its own findings of fact is unconstitutional." *Arbino* at ¶ 35.

{¶59} In *Arbino*, the Supreme Court of Ohio was considering whether R.C. 2315.21, limiting punitive damages in tort actions, was constitutional. *Id.* at ¶ 7. The court determined that "[s]o long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings, awards may be altered as a matter of law. There is no question that the right to a trial by jury does not extend to the determination of questions of law." *Id.* at ¶ 37.

{¶60} Before having a right to a trial by jury to determine liability and damages, one must have a viable claim for relief, which in this case, as matter of law, Kennedy did not have because it was extinguished with the expiration of the statute of repose.

{¶61} Based on the foregoing, Kennedy's second assigned error is without merit.

{¶62} In her first assigned error, Kennedy contends the trial court erred in granting a directed verdict in favor of all the defendants, including Kindred, which never filed an answer or any responsive pleading.

{¶63} At the outset, we note that Kennedy never moved for a default judgment against Kindred. Civ.R. 55 provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default *shall apply in writing or orally to the court therefor * * *.* (Emphasis added.) Civ.R. 55(A).

{¶64} Under the circumstances of this case, whether a defendant is in default is simply not relevant since "the statute of repose bars the claim – the right of action – itself."

20

*Wilson II* at ¶ 9. Kennedy filed her claims against Kindred well after the four-year statute of repose expired. Her claims were dismissed because she stated no viable claim for relief.

**{¶65}** To state it differently, if we held that the trial court improperly granted a directed verdict to Kindred and reinstated her claims, there are no claims to reinstate. A statute of repose bars "any suit that is brought after a specified time since the defendant acted * * *." *Id.*, quoting *Black's Law Dictionary* 1707 (11th Ed.2019).

**{¶66}** Kennedy's first assignment of error is without merit.

**{¶67}** The judgment of the Portage County Court of Common Pleas is affirmed.

MATT LYNCH, J., concurs,

MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

———————————

MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

**{¶68}** I must respectfully dissent since I find that Ms. Kennedy's second assignment of error asserting the medical malpractice statute of repose, R.C. 2305.113(C), does not apply to wrongful death actions, has merit. Since it is also dispositive of the appeal, her remaining question raised in that assignment of error regarding the applicability of the out-of-state tolling provision of R.C. 2305.15, along with her first assignment of error, would be moot.

**{¶69}** A claim for wrongful death is a separate and unique claim for relief. The text of R.C. 2125.02, governing wrongful death claims, does not provide a statute of

21

repose for a wrongful death arising out of a medical claim. Nor is there a single reference to wrongful death in R.C. 2305.113. Thus, the trial court erred in granting a directed verdict in favor of appellees on this basis. To the extent this court has held to the contrary in *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, *appeal not accepted*, 166 Ohio St.3d 1480, 2022-Ohio-1332, 185 N.E.3d 1124, I would overrule that decision.

{¶70} Appellees, Western Reserve and Dr. Acharya, filed a motion for judgment on the pleadings, and Dr. Kendis filed a motion to dismiss, both raising arguments based on the medical malpractice statute of repose, R.C. 2305.113(C). The trial court denied the motions based on a First District case, *Wilson v. Durrani*, 2019-Ohio-3880, 145 N.E.3d 1071 (1st Dist.) ("*Wilson I*"), which held that the savings statute, R.C. 2305.19, if properly invoked, allows an action to survive beyond the expiration of the statute of repose.

**The Medical Malpractice Statute of Repose, R.C. 2305.113(C)**

{¶71} The statute of repose for medical claims is contained in R.C. 2305.113(C), which states: "Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

{¶72} "(1) No action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim.

{¶73} "(2) If an action upon a medical * * * claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim, then, any action upon that claim is barred.

22

{¶74} In *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448 ("*Wilson II*"), the Supreme Court of Ohio held that a plaintiff may not take advantage of Ohio's savings statute, R.C. 2305.19(A), to refile a medical claim after the applicable one-year statute of limitations has expired if the four-year statute of repose for medical claims has also expired. *Id.* at ¶ 1. The court determined that R.C. 2305.19(A) neither operates as a statute of limitations nor operates to toll the statute of limitations. *Id.* at ¶ 18. Rather, it provides a plaintiff with a limited period of time in which to refile a dismissed claim by commencing a new action that would otherwise be barred by the statute of limitations. *Id.*

{¶75} The court further determined that R.C. 2305.19(A) does not create an exception to the statute of repose. If the General Assembly had intended the savings statute to provide an extension of the medical claims statute of repose, it would have expressly provided one in R.C. 2305.113(C), as it did in R.C. 2305.10(C), the statute of repose that governs product-liability claims. *Id.* at ¶ 38. The general character of statutes of repose is that they provide an absolute temporal limit on a defendant's potential liability. *Id.* at ¶ 37.

{¶76} The court held: "R.C. 2305.113(C) is a true statute of repose that, except as expressly stated in R.C. 2305.113(C) and (D), clearly and unambiguously precludes the commencement of a medical claim more than four years after the occurrence of the alleged act or omission that forms the basis of the claim. Expiration of the statute of repose precludes the commencement, pursuant to the savings statute, of a claim that has previously failed otherwise than on the merits in a prior action." *Id.* at ¶ 38.

{¶77} Recently, the Tenth District Court of Appeals extensively examined the application of the medical malpractice statute of repose, R.C. 2305.113(C), to a statutory

23

wrongful death claim. The court concluded that the four-year statute of repose for medical malpractice actions does not apply. The text of R.C. 2305.113(C) fails to include a claim for relief for wrongful death, and wrongful death claims under R.C. Chapter 2125 are not medical claims within the meaning of R.C. 2305.113, which sets out both the statute of limitations and the statute of repose in medical negligence actions. *See Everhart v. Coshocton Cty. Mem. Hosp.*, 2022-Ohio-629, 186 N.E.3d 232, ¶ 51 (10th Dist.), *appeal accepted*, 167 Ohio St.3d 1442, 2022-Ohio-2162, 189 N.E.3d 818.

{¶78} Since the unanimous decision in *Everhart*, the Tenth District has revisited the issue with six judges on the Tenth District weighing in, along with the First and Sixth Districts. All of these decisions find the medical claim statute of repose inapplicable to wrongful death claims. *See McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-105, 2022-Ohio-1033, *appeal accepted*, 167 Ohio St.3d 1490, 2022-Ohio-2788, 193 N.E.3d 567; *Maxwell v. Lombardi*, 10th Dist. Franklin No. 21AP-556, 2022-Ohio-1686, *appeal accepted*, 167 Ohio St.3d 1517, 2022-Ohio-3214, 195 N.E.3d 142; *Wood v. Lynch*, 10th Dist. Franklin No. 20AP289, 2022-Ohio-1381, *appeal accepted*, 167 Ohio St.3d 1516, 2022-Ohio-3214, 195 N.E.3d 141; *Ewing v. UC Health*, 2022-Ohio-2560, 193 N.E.3d 1132 (1st Dist.), *appeal accepted*, 168 Ohio St.3d 1464, 2022-Ohio-4268, 198 N.E.3d 888; *Davis v. Mercy St. Vincent Med. Ctr.*, 2022-Ohio-1266, 190 N.E.3d 77 (6th Dist.), *appeal accepted*, 167 Ohio St.3d 1490, 2022-Ohio-2788, 193 N.E.3d 564.

{¶79} The *McCarthy* decision succinctly summarizes the rationale underlying the Tenth District's line of cases:

{¶80} "Reviewing the history of and differences between claims for wrongful death and medical malpractice, we found that a claim for 'wrongful death is a separate and

24

unique cause of action from other claims.' *Everhart* at ¶ 16. We noted that R.C. 2125.02, which governs limitations on wrongful death claims, did not provide a statute of repose for a wrongful death arising out of a medical claim. In discussing whether the statute of repose for medical claims in R.C. 2305.113(C) applied to a medical wrongful death claim, we noted that '[t]here is not a single reference to wrongful death in R.C. 2305.113.' *Id.* at ¶ 25. Applying statutory canons of construction, we found the absence of reference to wrongful death in R.C. 2305.113 to be crucially important given the extensive list of claims included under 'derivative claims for relief' pursuant to R.C. 2305.113(E)(7). Acknowledging the Supreme Court's holding in *Wilson [II]*, we noted the court's holding was specific to the application of the savings statute to medical malpractice claims and had not been expanded to include Ohio's wrongful death statute. As a result, we held that the statute of repose for medical claims under R.C. 2305.113(C) did not apply to claims for wrongful death under R.C. Chapter 2125 and, therefore, concluded the trial court erred in finding the plaintiff was barred from pursuing her wrongful death claim. *Id.* at ¶ 51." *McCarthy* at ¶ 32.

{¶81} This conclusion is not novel or confined to the Tenth District. As argued in this case and noted in *Everhart*, earlier federal court decisions looking at Ohio law set out by the Supreme Court of Ohio in *Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519, 166 N.E.2d 765 (1960), and *Koler v. St. Joseph Hosp.*, 69 Ohio St.2d 477, 432 N.E.2d 821 (1982), have recognized the concept that wrongful death and medical negligence actions are distinct and different claims for relief. *Everhart* at ¶ 40; *see De La Torre v. Corr. Corp. of Am.*, N.D.Ohio No. 4:16CV2004, 2017 WL 6558579 (Dec. 22, 2017), and *Daniel v. United States*, 977 F.Supp.2d 777 (N.D.Ohio 2013).

25

**{¶82}** *Daniel* specifically concluded that the medical negligence statute of repose does not apply to a wrongful death action, noting that the "sole category of exceptions to the two-year wrongful death statute of limitations the Ohio legislature has seen fit to include" deals with product liability claims. *Id.* at 782-783. "Following the reasoning in *Klema* and *Koler*,[1] the Court finds that the 'medical claim' statute of repose, set forth in another division of the code and not in the wrongful death division, does not apply to plaintiff's wrongful death claim." *Id.* at 783.[2]

**{¶83}** "The distinction is all the more pointed in the light of the fact that even though both a survivor action and a death action may be prosecuted by the same personal representative, a judgment for the defendant in one case is not a bar to a recovery in the other." *Klema* at 521-522.

**{¶84}** Underlying the application of the rules of statutory construction employed by these courts is the well-settled notion that an appellate court's duty is "'to apply the statute as the General Assembly has drafted it; it is not our duty to rewrite it,' even to cure a perceived omission." *Crissinger v. Christ Hosp.*, 2017-Ohio-9256, 106 N.E.3d 798, ¶ 23 (1st Dist.), quoting *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29; *see Schlueter v. Cleveland Bd. of Edn.*, 12 Ohio Misc. 186, 199, 230 N.E.2d 364 (C.P.1960) ("[A statute's] undesirable consequences do not justify a departure from the terms of the act as written, and the

1. The Supreme Court of Ohio in *Koler* specifically rejected the argument that a wrongful death claim against a physician or hospital seeking damages because of the death of a patient is a "medical claim." *Id.* at 480-481.
2. For an extensive recitation of the history of the wrongful death statute in Ohio, *see Klema* at 522-525.

Case No. 2021-P-0055

courts may not supply a casus omissus however desirable it may be to supply the omitted provision.").

**{¶85}** There have been many amendments to the statutes addressing wrongful death and medical negligence during the multiple rounds of so-called "tort reform" legislation.[3] The General Assembly revised the statutes of repose pertaining to wrongful death actions relating to product liability claims and defective improvements to real property but not to those relating to medical care. *See* Am.Sub.S.B. No. 80, 2004 Ohio Laws File 144.

**{¶86}** The legislation that resulted in the change from the former R.C. 2305.11 to R.C. 2305.113 (Sub.S.B. No. 281, 2002 Ohio Laws File 250) expanded the list of categories of medical care practitioners covered. The act did not change the one-year statute of limitations or the ability to extend that time via a so-called "180 day letter." *Id.*

**{¶87}** Regarding the statute of repose, the legislation only added new exceptions to R.C. 2305.113(D): "(1) If a person * * * could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after

---

3. *See*, *e.g.*, 1987 Sub.H.B. No. 1 (changed punitive damages, product liability and insurance law); Am.Sub.H.B. No. 350, 1996 Ohio Laws File 244 (punitive damages reform later found unconstitutional by the Supreme Court of Ohio in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999)); H.B. No. 412, 2002 Ohio Laws File 185 (established limitations on the liability of residential and nursing home care with respect to punitive damages and employee conduct); Sub.S.B. No. 281, 2002 Ohio Laws File 250 (enacted additional exceptions to the statute of repose for an action upon a medical claim, limited noneconomic damages, modified collateral source rule); S.B. No. 120, 2002 Ohio Laws File 240 (modified the rule of joint and several liability, replacing it with proportional liability in most cases); S.B. No. 179, 2002 Ohio Laws File 243 (reformed Ohio's peer review process and provided protection for health care facilities for conduct within the scope of peer review committees); S.B. No. 106, 2002 Ohio Laws File 239 (reformed Ohio's political subdivision sovereign immunity law and created liability protections for political subdivisions such as schools, municipalities, counties, and townships); Am.Sub.H.B. No. 292, 2004 Ohio Laws File 88 (required filing of medical criteria in asbestos cases and required the filing of exposure criteria in asbestos cases involving wrongful death and certain lung cancer claims); Am.Sub.S.B. No. 80, 2004 Ohio Laws File 144 (statutory cap on noneconomic tort damages as applied to medical negligence, ten-year statute of repose for defective/unsafe improvements to real property, and product liability, including wrongful death claims).

Case No. 2021-P-0055

the occurrence of the act or omission, but * * * discovers the injury resulting from that act or omission before the expiration of the four-year period * * *, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission"; and (2) If the alleged basis of the claim involves a foreign object, "the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object." *Id.*

{¶88} It is also important to note that the definition of "[d]erivative claims for relief" is written in the conjunctive—that is, they are claims that "include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, *and* that seek the recovery of damages for any of the following:

{¶89} "(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

{¶90} "(b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the

28

chiropractic diagnosis, care, or treatment." (Emphasis added.) R.C. 2305.113(E)(7)(a) and (b).

**{¶91}** Wrongful death is not included.

**{¶92}** I agree with the Tenth District that our reasoning in *Martin*, *supra*, like that of the Third District in *Smith v. Wyandot Mem. Hosp.*, 2018-Ohio-2441, 114 N.E.3d 1224 (3d Dist.), *appeal not accepted*, 153 Ohio St.3d 1505, 2018-Ohio-4285, 109 N.E.3d 1260, is flawed. "While there is no doubt that the statute of limitations and statute of repose address different motivations and actors, the central argument of *Daniel* is correct, that a reviewing court should not apply a definition of 'medical claims' addressing medical malpractice actions when considering a wrongful death case unless there is a statutory basis for such an interpretation." *Everhart* at ¶ 43.

**{¶93}** This is especially true when the definition of "medical claim" in R.C. 2305.113(E)(3) includes "[d]erivative claims for relief that arise from the medical diagnosis, care, or treatment of a person." R.C. 2305.113(E)(3)(a). Although a survival claim for the injuries, conscious pain and suffering, and compensatory damages suffered by a decedent during his or her lifetime as a result of medical negligence, together with a spouse's claim for loss of consortium, which is a derivative claim, may be joined in one action with a wrongful death claim, long-standing precedent provides that wrongful death claims are *not* derivative claims. "Because a wrongful death action is an independent cause of action, the right to bring the action cannot depend on the existence of a separate cause of action held by the injured person immediately before his or her death. To conclude otherwise would convert the wrongful death action from an independent cause

29

of action to a derivative action, one dependent on a separate cause of action." *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994).

{¶94} In other words, "when a person is injured by the tortious conduct of another and the person later dies from the injury, two claims arise. The first is a claim for malpractice or personal injury, enforced either by the injured person herself or by her representative in a survival action. The second is a wrongful death claim, enforced by the decedent's personal representative on behalf of the decedent's beneficiaries." *Id.* at 179.

{¶95} An earlier Third District decision recognized this proposition: "The time limits prescribed in the wrongful death statute cannot be diminished or embellished based on the underlying wrongful act that caused the death of the decedent in a particular case. To do so would be an abrogation of the statute since the two-year time limit is a precondition to the very existence of the wrongful death cause of action." *Schaffer v. Gateway Harvestore, Inc.*, 129 Ohio App.3d 448, 453, 717 N.E.2d 1179 (3d Dist.1998).

{¶96} This critical distinction between a common law tort action brought by one who has suffered injury and a statutory wrongful death action brought to recover losses suffered by the survivors dates back to the 1808 King's Bench decision in *Baker v. Bolton*, 1 Campbell 493, 170 Eng.Rep. 1033 (1808), which was followed by the decision in *Carey v. Berkshire R. Co.*, 55 Mass. 475 (Mass.1848). In *Baker*, the court held that "[i]n a civil court, the death of a human being could not be complained of as an injury"; thus, a husband had no claim for relief for the loss of his wife's services resulting from her wrongful death. *Carey*, relying on *Baker*, held that the death of a human being does not

create a civil common law cause of action for the beneficiaries of the decedent. *Id.* at 478.

{¶97} As one commentator noted, the Industrial Revolution brought with it more industry-related negligent deaths and a concern with protecting industrial growth from damages from wrongful death claims. "Subsequently, a vast majority of state courts followed the *Carey* court's lead in abolishing the civil cause of action for wrongful death. These states decided to ignore precedent and tradition for the purpose of promoting industrial growth. Therefore, the general common law in the United States after 1848 reflected the view that the death of an injured party extinguished all rights of action for any and all injuries pertaining to the deceased." Raby, *Ohio's New Wrongful Death Statute: An Expanded Scope of Recoverable Damages*, 53 U.Cin.L.Rev. 1083, 1087 (1984).

{¶98} As societal values changed, legislation offered some relief to a decedent's family. In England, the parliament passed Lord Campbell's Act in 1846, which was adopted in Ohio's first wrongful death statute in 1851, giving a decedent's beneficiaries a civil claim for relief for their pecuniary losses resulting from their decedent's wrongful death. 49 Laws 117, ch. 1105 (1851).

{¶99} As noted in *Everhart*, one of the cases decided by the Supreme Court of Ohio under the wrongful death statute held that the statute created "a new cause or right of action distinct and apart from the right of action which the injured person might have had and upon the existence of which such new right is conditioned." *Karr v. Sixt*, 146 Ohio St. 527, 67 N.E.2d 331 (1946), paragraph one of the syllabus; *see Everhart* at ¶ 14. The *Everhart* court also cited a decision of the Supreme Court of the United States, *St.*

31

*Louis, Iron Mountain & S. Ry. Co. v. Craft*, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915), which addressed this distinction and was later cited by the Supreme Court of Ohio in *Klema*:

{¶100} "Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong." *St. Louis, Iron Mountain* at 658; *see Everhart* at ¶ 15, and *Klema* at 521.

{¶101} The distinction between a claim for wrongful death and a common law claim for personal injury also extends into the realm of damages, so much so that the Ohio Constitution provides that "[t]he amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law." Ohio Constitution, Article I, Section 19a.

{¶102} In fact, during the round of tort reform resulting in H.B. No. 350, the General Assembly's amendments to the former "collateral benefits" statute specifically deleted R.C. 2317.45(A)(2)'s inclusion of wrongful death actions. *See* Am.Sub.H.B. No. 350, 1996 Ohio Laws File 244. The General Assembly's deletion was apparently in response to the decision in *Samuels v. Coil Bar Corp.*, 61 Ohio Misc.2d 407, 579 N.E.2d 558 (C.P.1991) (R.C. 2317.45, which requires the court in a tort action to subtract certain collateral benefits from a compensatory damage award granted to plaintiff, limits the amount of damages recoverable by a plaintiff in a wrongful death action in violation of

32

Ohio Constitution, Article I, Section 19a, and is therefore unconstitutional as to wrongful death actions.).

{¶103} Further support for the separate nature of the two types of claims rests upon the legislative fact that the wrongful death statute is found in its own separate chapter, R.C. Chapter 2125, with its own statute of limitations and a statute of repose for wrongful death caused by defective products only. So, too, is there a separate savings statute for wrongful death actions found in R.C. 2125.04.

{¶104} When statutory language is ambiguous, the rules of statutory interpretation must be applied to determine the intent of the legislature. *Wingate v. Hordge*, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979). "The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995). Under this canon of construction, we read all statutes relating to the same general subject matter together and interpret them in a reasonable manner that "'give[s] proper force and effect to each and all of the statutes.'" *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 13, quoting *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995).

{¶105} Finally, the Sixth District recently certified the record in *Davis*, *supra*, to the Supreme Court of Ohio, finding the decision in that case was in conflict with the Third District's decision in *Smith, supra*, with the Fifth District's decision in *Mercer v. Keane*, 2021-Ohio-1576, 172 N.E.3d 1101 (5th Dist.), *appeal not accepted*, 164 Ohio St.3d 1420, 2021-Ohio-2923, 172 N.E.3d 1047, and with this court's decision in *Martin, supra*.

33

{¶106} The Sixth District explained its disagreement with those opinions, which all held that the medical-claim statute of repose applies to wrongful-death claims that arise from negligent medical care. *Davis* at ¶ 56. The court set forth, as is pertinent to our case, four bases for reaching the contrary conclusion (that the medical-claim statute of repose does not apply to wrongful-death claims that arise from negligent medical care). (1) A wrongful-death claim is not subject to the statute of limitations in R.C. 2305.113(A); thus, there is no reason it would be subject to the other limitations periods set forth in that statute, such as the four-year medical claim statute of repose. *Id.* at ¶ 57. (2) If the legislature had intended to impose a repose-period for wrongful-death actions involving claims of medical malpractice, it could have done so in the same manner that it did for wrongful-death actions involving claims of product liability. In other words, the Wrongful Death Act, R.C. 2125.01 et. seq., contains a two-year statute of limitations pursuant to R.C. 2125.02(D)(1), with the only exception contained in R.C. 2125.02(D)(2), the ten-year statute of repose for wrongful-death actions involving product liability claims.[4] Notably absent is an exception for medical malpractice. *Id.* at ¶ 58. (3) Recognizing that a wrongful death claim is an action independent of a medical malpractice claim leads to the conclusion that it is not subject to the medical claim statute of repose. *Id.* at ¶ 61. (4) Lastly, contrary to the conclusion in other courts, such as this court in *Martin*, the Civ.R. 10(D)(2) affidavit of merit requirement that applies to wrongful death claims arising from medical negligence does not dictate a conclusion that the medical statute of repose is

_____

4. Outside of the Wrongful Death Act, there are only two other statutes applicable to wrongful death claims, R.C. 2305.131(A)(1) (establishing a ten-year statute of repose for action for wrongful death that arise out of defective and unsafe condition of an improvement to real property) and R.C. 2305.101(A) (claims for bodily injury or wrongful death caused by the Dalkon Shield intrauterine device). *See Davis* at ¶ 60.

34

Case No. 2021-P-0055

also applicable. *Davis* at ¶ 62; *see Martin* at ¶ 46. Rather, there is a distinction between applying Civ.R. 10(D)(2), a procedural rule to all claims, including wrongful death claims, that arise from "the medical diagnosis, care, or treatment of any person" and applying the limitation periods of R.C. 2305.113 period to those claims, particularly since R.C. 2305.113(A) does not apply to wrongful death claims. *Davis* at ¶ 62. In sum, the Sixth District concluded that the four-year medical claim statute of repose is not applicable to wrongful death action predicated on negligent medical care. *Id.* at ¶ 63.

{¶107} It is important at this point to distinguish and explain this court's holding in *Wilson v. Mercy Health*, 11th Dist. Trumbull No. 2021-T-0004, 2021-Ohio-2470, which dealt with a wrongful death complaint, and a valid affidavit pursuant to Civ.R. 10(D)(2). In *Wilson*, the complaint was filed by the mother of the deceased as the administrator of the estate (the "fiduciary"). *Id.* at ¶ 1. Her newborn infant died several hours after his birth from meconium aspiration. *Id.* at ¶ 2. Appellee, the hospital, filed a motion to dismiss, arguing the fiduciary's affidavits were insufficient because they did not comply with Civ.R. 10. *Id.* at ¶ 2. The fiduciary filed amended affidavits; however, before the court could decide if the affidavits were sufficient, she voluntarily dismissed her complaint. *Id.* Pursuant to the savings statute, R.C. 2305.19, the fiduciary refiled her complaint with affidavits stating that the doctor and nurses at the hospital "may have" contributed to the child's demise. *Id.* at ¶ 3. The hospital filed a motion to dismiss, arguing that the use of the word "may" did not meet the requirements of Civ.R. 10(D)(2)(a)(iii). *Id.* The fiduciary attached an amended affidavit to her reply brief, but the trial court did not acknowledge it and granted the hospital's motion to dismiss. *Id.*

35

{¶108} The statute of repose for wrongful death claims against a treating physician and hospital was not at issue. Rather, the fiduciary's assignments of error concerned procedural issues. *See id.* at ¶ 5, ¶ 18, ¶ 21. As relevant to the instant case, the proposition of law argued under her third assignment of error was that Civ.R. 10(D) affidavits of merit should not be required in wrongful death actions asserted against a hospital and physician. *Id.* at ¶ 21-22. We decided that *the procedural rule* creating a heightened pleading requirement when the case involves health care treatment applies equally to wrongful death actions. *Id.* at ¶ 33-34. As the Supreme Court of Ohio held in *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, the very purpose of Civ.R. 10(D)(2) is to place a heightened pleading requirement when the claim is against a health care provider. *Id.* at ¶ 12.

{¶109} Simply put, a procedural rule that employs the definition of a "medical claim" set out in R.C. 2305.113 does not inferentially or directly alter the substance of the wrongful death statute of repose.

{¶110} The Modern Courts Amendment of 1968 empowers the Supreme Court of Ohio to create rules of practice and procedure for the courts of this state. In *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, the Supreme Court of Ohio explained that the Ohio Constitution, Article IV, Section 5(B) "expressly states that rules created in this manner 'shall not abridge, enlarge, or modify any substantive right.'" *Id.* at ¶ 17. "Thus, if a rule created pursuant to Section 5(B), Article IV conflicts with a statute, the rule will control for procedural matters, and the statute will control for matters of substantive law." *Id. Accord Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 12.

36

{¶111} "Substantive" in this context has been defined by the Supreme Court of Ohio as "that body of law which creates, defines and regulates the rights of the parties." *Proctor* at ¶ 17, quoting *Krause v. State*, 31 Ohio St.2d 132, 145, 285 N.E.2d 736 (1972), *overruled on other grounds*, *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 426 N.E.2d 784 (1981). "The word substantive refers to common law, statutory and constitutionally recognized rights." *Krause* at 145. "By contrast, procedural law 'prescribes methods of enforcement of rights or obtaining redress.'" *Havel* at ¶ 16, quoting *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 34.

{¶112} In an oft-quoted passage utilized to reject repose statutes, it was asserted that:

{¶113} "Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, * * * or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical 'axiom,' that a statute of limitations does not begin to run against a cause of action before that cause of action exists." (Footnotes omitted.) *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir.1952) (Frank, J., dissenting).

{¶114} For these reasons and upon the authorities cited, I respectfully dissent.

37